UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LAUREN NICOLE PRICE,

    Plaintiff,

v.     Case No.:  2:23-cv-241-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

# OPINION AND ORDER

Plaintiff Lauren Nicole Price seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their positions. Plaintiff also filed a reply brief. As explained below, the decision of the Commissioner is **REVERSED and REMANDED** under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.    Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

        **A.    Social Security Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B.  Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo

standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment, then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform past relevant work, the ALJ must determine at step five whether the claimant's RFC permits her to perform other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove she is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

### C. Procedural History

Plaintiff applied for a period of disability and disability insurance benefits on May 3, 2021, alleging disability beginning on January 16, 2021. (Tr. 59, 166-67). The applications were denied initially and on reconsideration. (Tr. 59, 60). Plaintiff requested a hearing, and on July 21, 2022, a hearing was held before Administrative

Law Judge Charles Arnold ("ALJ"). (Tr. 31-50). On August 15, 2022, the ALJ entered a decision finding Plaintiff not under a disability from January 16, 2021, through the date of the decision. (Tr. 13-25).

Plaintiff requested review of the decision, but the Appeals Council denied Plaintiff's request on February 8, 2023. (Tr. 1-5). Plaintiff filed a Complaint (Doc. 1) on April 6, 2023, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 13).

### D. Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2026. (Tr. 15). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 16, 2021, the alleged onset date. (Tr. 15). At step two, the ALJ found that Plaintiff had the following severe impairments: "history of traumatic brain injury and head injury with migraines and post-concussion syndrome; depression; anxiety; and attention-deficit hyperactivity disorder; and sprain and nail avulsion of the left great toe." (Tr. 15). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (Tr. 15).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 [C.F.R. §] 404.1567(b) with the following limitations. The claimant can lift/carry 10 pounds frequently and 20 pounds occasionally. She can sit for six hours and stand/walk for six hours during and eight-hour workday. The clamant can perform low-stress work, defined as work without high-production demands; only simple, routine, repetitive tasks with simple instructions; and only occasional interaction with others at the worksite.

(Tr.18).

At step four, the ALJ determined that Plaintiff was not able to perform her past relevant work as a medical assistant, residential counselor, and grocery assistant manager. (Tr. 24). At step five, the ALJ found considering Plaintiff's age (29 years old on the alleged disability onset date), education (at least high school), work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 24). Specifically, the vocational expert testified that a person with Plaintiff's limitations could perform such occupations as:

(1) Photocopy machine operator, DOT 207.685-014, light, SVP 2[1]

(2) Mail clerk, DOT 209.637-026, light, SVP 2

---

[1] DOT refers to the *Dictionary of Occupational Titles*.

    (3)   Office clerk, DOT 239.367-010, light, SVP 2

(Tr. 25). The ALJ concluded that Plaintiff had not been under a disability from January 16, 2021, through the date of the decision. (Tr. 25).

## II.    Analysis

Plaintiff argues that the ALJ failed to account for all of her limitations in the RFC assessment. (Doc. 16, p. 12). Plaintiff claims the evidence shows that she would have multiple severe headaches such as migraines, but the ALJ did not include limitations to account for missing work based on these migraines., (Doc. 16, p. 12). The Commissioner argues that the ALJ fully reviewed the record and provided substantial evidence for the RFC assessment. (Doc. 18, p.6). While recognizing that Plaintiff's post-concussion syndrome symptoms had not resolved, the ALJ failed to address any possible absences based on severe headaches in the RFC.

An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations secondary to her established impairments. *Delker v. Comm'r of Soc. Sec.*, 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009). In determining a claimant's RFC, the ALJ must consider all relevant evidence including non-severe impairments. *Barrio v. Comm'r of Soc. Sec.*, 394 F. App'x 635, 637 (11th Cir. 2010). Furthermore, the ALJ must "'scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quoting *Cowart v. Schweiker*, 662 F.2d

731, 735 (11th Cir.1981)). In other words, ALJs "are by law investigators of the facts and are tasked not only with the obligation to consider the reasons offered by both sides, but also with actively developing the record in the case." *Id*.

At step two, the ALJ found Plaintiff's traumatic brain injury and head injury with migraines to be severe impairments. (Tr. 15). In making this finding, the ALJ explained that this severe impairment "significantly limit[ed] the ability to perform basic work activities as required by SSR 85-28." (Tr. 15). *See Raduc v. Comm'r of Soc. Sec.*, 380 F. App'x 896, 898 (11th Cir. 2010) ("By definition, a severe impairment limits significantly a claimant's ability to do basic work activities."). Later in the decision, the ALJ acknowledged that some of Plaintiff's symptoms, including severe headaches, had not resolved, but he found they had improved with treatment. As a result, the ALJ determined:

> The above Residual Functional Capacity accommodates the claimant's post-concussion symptoms including headaches and dizziness by limiting her to a "light" exertional level in low-stress work with simple tasks, no high-production demands, and only occasional interaction with others.

(Tr. 21).

In the decision, the ALJ summarized the medical reports from Plaintiff's January 16, 2021 fall when she hit her head and sought emergency treatment . (Tr. 19). The ALJ noted that in January, February, and March 2021, the records document Plaintiff having ongoing headaches as well as other symptoms relating to post-

concussion syndrome. (Tr. 20). The ALJ summarized a February 2021 MRI imaging that showed numerous scattered foci of subcortical white matter seen in patients with migraines along with Chiari I deformation. (Tr. 20). In May, she had 3 episodes of falling and hitting her head at least once, in July she continued to complain of headaches that worsened with noise and bright lights, and on July 3, she fell again and returned to the emergency department. (Tr. 20, 428). In August, Plaintiff took medication for a severe headache once, and in September, Plaintiff reported that she had six days in when she required medication for severe headaches and the rest of the days had only mild or moderate symptoms. (Tr. 21). The ALJ also noted that in April 2022, Plaintiff returned to the emergency department for a migraine, and records in May document ongoing symptoms, including a 2-day history of severe headaches with nausea, vomiting, and poor sleep. (Tr. 21).

While the ALJ noted the recurrence of mild, moderate, and severe headaches throughout the period at issue, the ALJ focused on the improvement of Plaintiff's symptoms. (Tr. 20-21). For example, the ALJ referred to a January 2021 treatment note stating that Plaintiff's reported a 98% improvement in her post-concussion symptoms. (Tr. 20). In this treatment note, Plaintiff did state that she felt 98% better, but also reported that her headaches occurred about 3-4 times per week with no trigger, had a 7/10 intensity rating, and ranged from 4 hours to all day. (Tr. 280). She further reported sensitivity to loud noises and light. (Tr. 280). In April 2022, the ALJ

noted that Plaintiff's post-concussion symptoms had improved, but then stated that she was doing well until she had another severe headache and returned to the emergency room. (Tr. 21). The ALJ also acknowledged that Plaintiff's post-concussion symptoms had not resolved but had improved. (Tr. 21). Even with improvement, the ALJ did not discuss or explain how Plaintiff would not miss at least some days of work most months based on severe headaches that could be exacerbated by loud noise or bright lights.

Further troubling is that at the hearing, counsel asked the vocational expert the tolerance for unexpected absences. (Tr. 48). The vocational expert responded that for unskilled and semiskilled employees, employers would tolerate less than one day per month for unscheduled absences and no more than nine days per year. (Tr. 48-49). Counsel also asked the tolerance for being off-task, and the vocational expert responded that employers would tolerate no more than nine percent, or less than ten percent off-task behavior. (Tr. 49). Counsel then asked if an employee was suddenly struck with a headache and had to leave work early or come in late, would that be considered an absence. (Tr. 49). The vocational expert responded, yes. (Tr. 49).

Here, the ALJ cited to significant medical evidence showing that Plaintiff had severe, moderate, and mild headaches frequently. Still, the RFC only accounts for her headaches by limiting her to the light exertional level in low-stress work with simple tasks, no high-production demands, and only occasional interactions with

others. (Tr. 18, 21). These limitations do not address the frequency and severity of Plaintiff's headaches and how they would affect Plaintiff's ability to work without excessive absences and being off-task behavior. Substantial evidence does not support the ALJ's RFC assessment and remand is warranted.

### III.  Conclusion

For the reasons discussed above, the decision of the Commissioner is **REVERSED and REMANDED** such that this action is remanded under sentence four of 42 U.S.C. § 405(g) for the Commissioner to reconsider Plaintiff's residual functional capacity assessment. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate any motions and deadlines, and afterward close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on June 21, 2024.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties